**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| IN RE:<br><br>KERI DENETTE BLALOCK and<br>KENNETH CHARLES BLALOCK<br><br>        Debtors. | Bankruptcy Case No. 23-42207-MXM<br>(Chapter 7) |
| KAPITUS SERVICING, INC., AS<br>SERVICING AGENT FOR KAPITUS LLC<br>              Plaintiff,<br>vs.<br><br>KERI DENETTE BLALOCK,<br>individually, and BSMG<br>CONSTRUCTION MANAGEMENT, LLC<br><br>        Defendants. | Adversary No. _____ |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT AND FOR**
**DENIAL OF DISCHARGABILITY OF DEBT OWED TO**
**KAPITUS SERVICING, INC., FOR CONVERSION,**
**UNJUST ENRICHMENT, AND OTHER RELIEF**

Kapitus Servicing, Inc., as servicing agent for Kapitus LLC ("Kapitus" or the "Plaintiff"), by and through its undersigned attorneys, files this Complaint under Section 523 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") objecting to the dischargeability of a pre-petition debt owed to Kapitus by Defendant, Keri Denette Blalock, individually, and also seeking judgment for conversion, unjust enrichment, fraudulent transfer, and replevin against Keri Denette Blalock, individually and BSMG Construction Management, LLC under Virginia State law. In support hereof, Kapitus alleges as follows:

## JURISDICTION AND VENUE

1.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. §§ 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2.      This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

4.      If the Court should find that this is not a core proceeding, Kapitus consents to entry of final judgment by the Court pursuant to Fed. R. Bankr. P. 7008.[1]

5.      This Adversary Proceeding is brought in connection with the Chapter 7 case filed by the Debtor as Case Number 23-42207-MXM, now pending in this Court.

## PARTIES

6.      Plaintiff, Kapitus, is a Virginia Corporation and at all relevant times maintained its offices at 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201 and 120 West 45th Street, Fourth Floor, New York NY 10036.

7.      Upon information and belief, Defendant, Keri Denette Blalock ("Blalock" or the "Debtor/Defendant") is a natural person and is a resident of the State of Texas residing at 8132 Joella Court, Grandview, Texas 76050. (Case No. 23-42207, ECF 1, p. 2).

8.      Upon information and belief, Debtor/Defendant was/is formerly known as Keri Anderson.

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus' rights, defenses, and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Kapitus expressly incorporates any reservation of rights that is incorporated in any Proof of Claim that it files in this matter (the "Proof of Claim").

9.      MYO Investments Inc., d/b/a My Own Power ("Merchant") is or was a business entity duly organized in the State of Texas with a business address of 420 Throckmorton Street, Suite 200, Fort Worth, TX 76102 as well as 1751 River Run, Suite 200, Fort Worth, TX 76107 and P.O. Box 1016, Grandview, Texas 76050. (Case No. 23-42207, ECF 1, p. 66). *See also, MYO Investments TX SOS Search Dated November 2023*, p. 1, **Exhibit 1**; *In Re MYO Investments, Voluntary Petition*, ECF 1, p. 1, **Exhibit 2**.

10.     Upon information and belief, Merchant's registered agent is Incorp Services, Inc., with a registered office address of 815 Brazos Street, Suite 500, Austin, TX 78701. *MYO Investments TX SOS Search Dated November 2023*, p. 1, **Exhibit 1**.

11.     BSMG Construction Management, LLC ("BSMG") is a limited liability company duly organized in the State of Texas with a principal office at 700 Lavaca Street, Suite 1401, Austin, TX 78701. *See BSMG TX SOS Search Dated November 2023*, **Exhibit 3**.

12.     Upon information and belief, BSMG also has a business address of 600 West 6th Street, Fort Worth, TX 76102.  (Case No. 23-42207, ECF 1, p. 48).

13.     BSMG's registered agent is Incorp Services, Inc., with a registered office address of 815 Brazos Street, Suite 500, Austin, TX 78701. *See BSMG TX SOS Search Dated November 2023*, **Exhibit 3**.

14.     As more fully detailed below, Kapitus is a secured creditor of Merchant and an unsecured creditor of Debtor/Defendant.

## **GENERAL ALLEGATIONS**

15.     On July 30, 2023, Debtor/Defendant filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (Case No. 23-42207, ECF 1).

16.    On October 31, 2023, Merchant filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code. *See In Re MYO Investments, Voluntary Petition*, ECF 1, **Exhibit 2**.

17.    Upon information and belief, at all times relevant hereto, the Debtor/Defendant controlled Merchant and made all decisions and statements to Kapitus relevant to the issues herein.

18.    Upon information and belief, Debtor/Defendant is or was, at all relevant times, a director of the Merchant. *MYO Investments TX SOS Search Dated November 2023*, p. 2, **Exhibit 1**.

19.    Upon information and belief, Debtor/Defendant is or was, at all relevant times, an owner of Merchant. (Case No. 23-42207, ECF 1, p. 18). *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 46, **Exhibit 2;** *MYO Investments August 2022 Application (Redacted),* **Exhibit 11**.

20.    Upon information and belief, at all relevant times, Merchant was the employer of Debtor/Defendant. (Case No. 23-42207, ECF 1, p. 50). *See also*, *In Re MYO Investments, Voluntary Petition*, ECF 1, p. 46, **Exhibit 2**.

21.    Upon information and belief, at all relevant times, Debtor/Defendant was the CEO of the Merchant. (Case No. 23-42207, ECF 1, p. 50). *See also*, *In Re MYO Investments, Voluntary Petition*, ECF 1, p. 4 **Exhibit 1**.

22.    Upon information and belief, at all relevant times, Debtor/Defendant was also the President of the Merchant. *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 46, **Exhibit 2**.

23.    Debtor/Defendant is an insider of Merchant pursuant to 11 U.S.C. § 101(31).

24.    Upon information and belief, Debtor/Defendant owns at least 49% of BSMG.

25.     Upon information and belief, Debtor/Defendant is or was, at all relevant times, a director of BSMG. *See BSMG TX SOS Search Dated November 2023*, p. 2, **Exhibit 3**.

26.     Upon information and belief, at all relevant times, BSMG was also the employer of Debtor/Defendant. (Case No. 23-42207, ECF 1, p. 48).

27.     Kapitus is a secured creditor of Merchant and an unsecured creditor of Debtor/Defendant with a claim against both in the amount of $191,023.12 [2] (along with additional costs, fees, expenses, and interest), as of July 30, 2023 (the "Petition Date") pursuant to a Forward Purchase Agreement (Fixed ACH Delivery), Sale Terms and Conditions, Security Agreement, and Personal Guaranty executed by Debtor/Defendant.

28.     Pursuant to Fed. R. Bankr. P. 4007(c) and the *Notice of Meeting of Creditors* (Case No. 23-42207, ECF 6), November 13, 2023, is the deadline for the filing of complaints objecting to discharge and for determination of dischargeability of debts.

29.     This Complaint is timely filed.

### SPECIFIC FACTUAL ALLEGATIONS

**A.     Debtor/Defendant's Agreement with Kapitus**

30.     On August 25, 2022, Kapitus and Debtor/Defendant, both on behalf of Merchant and as Guarantor, entered into a Forward Purchase Agreement (Fixed ACH Delivery), Sale Terms and Conditions, Security Agreement, Personal Guaranty, Agreement to Arbitrate[3], and Representations and Acknowledgements (collectively, the "Agreement") with Merchant, all of which are attached hereto and incorporated herein as **Exhibits 4 – 9**, respectively.

---

[2] The claim itemization is as follows:
    Agreement/Contractual Balance: $177,538.00
    Interest @ 10% (Contracted Interest Rate) (From 02/23/2023 to Petition Date): $ 7,685.12 (plus per diem)
    Default Fees: $2,500.00
    ACH Fees: $ 3,300.00
    Total Claim: $191,023.12

[3] The Agreement to Arbitrate is voluntary. *See Agreement to Arbitrate*, **Exhibit 8**.

31.     The Agreement is governed under Virginia law. *See Sale Terms and Conditions*, ¶ 4.5, p. 6, **Exhibit 5**.

32.     Debtor/Defendant signed the Agreement both on behalf of Merchant and as Guarantor. *See Forward Purchase Agreement*, p. 3, **Exhibit 4**; *Sale Terms and Conditions*, p. 8, **Exhibit 5**; *Security Agreement*, p. 3, **Exhibit 6**; *Personal Guaranty*, p. 2, **Exhibit 7**; *Representations and Acknowledgements*, p. 2, **Exhibit 9**.

33.     The Debtor/Defendant personally guaranteed Merchant's full performance of all representations, warranties, and covenants under the Agreement. *Personal Guaranty*, **Exhibit 7**.

34.     Under the Agreement, Kapitus purchased all of Merchant's accounts, receipts, contract rights, and other rights to payment arising from or relating to the payment to Merchant through cash, checks, electronic transfers, ACH transfers, credit cards, charge cards, debit cards, prepaid cards, mobile payments (including Apple Pay and other ACH payments) and other similar payment methods that may accrue to Merchant in the ordinary course of Merchant's business (collectively, the "Receipts") until the time Merchant paid $228,000.00 (the "Receipts Purchased Amount") in full. *See Forward Purchase Agreement*, p. 1, **Exhibit 4**.

35.     On August 26, 2022, Kapitus funded the Receipts Purchased Amount for the purchase price of $150,000.00 (less origination fees) (the "Purchase Price"). *See Forward Purchase Agreement*, p. 1, **Exhibit 4**; *Merchant Statement of Activity (Redacted)*, **Exhibit 10**.

**B.     Debtor/Defendant's Misrepresentations to Kapitus Prior to Entering into and Funding the Agreement**

36.     On or around August 17, 2022, Debtor/Defendant, on behalf of Merchant, applied for financing via an application with Yarrow Financial, a third-party broker procuring financing for Merchant and working with Kapitus. *See MYO Investments August 2022 Application (Redacted),* **Exhibit 11**.

37.    Debtor/Defendant, on behalf of Merchant, certified in the August 2022 Application for financing that: (i) she was authorized to apply for financing on behalf of Merchant; and (ii) all information provided with the application and supporting documents were true and complete and Debtor/Defendant would notify of any material changes to such information. *See MYO Investments August 2022 Application (Redacted),* **Exhibit 11**.

38.    Debtor/Defendant further understood and agreed that Yarrow Financial may provide credit and other information from the August 2022 Application regarding the Debtor/Defendant and Merchant to third parties who may use the information for any lawful purpose, including to offer credit, and/or other products and services to the Debtor/Defendant and/or Merchant. *See MYO Investments August 2022 Application (Redacted),* **Exhibit 11**.

39.    The August 2022 Application provides that the annual income of Debtor/Defendant was $355,000. *See MYO Investments August 2022 Application (Redacted),* **Exhibit 11**.

40.    The August 2022 Application provides Debtor/Defendant was the 100% owner of Merchant. *See MYO Investments August 2022 Application (Redacted),* **Exhibit 11**.

41.    After receiving the August 2022 Application, Debtor/Defendant, on behalf of Merchant, provided Kapitus, either directly or via Yarrow Financial, a third-party broker procuring financing with for Merchant and working with Kapitus, with various financial information supporting the application process including, but not limited to, recent monthly bank statements for the Merchant.

42.    After receiving the August 2022 Application, Kapitus provided Debtor/Defendant the Forward Purchase Agreement (Fixed ACH Delivery), Sale Terms and Conditions, Security Agreement, Personal Guaranty, Agreement to Arbitrate, and Representations and Acknowledgements outlining the purchase terms and including several representations and

acknowledgments Debtor/Defendant, both on behalf of Merchant and as Guarantor, was required to make.

43.    As a threshold step in Kapitus's consideration of whether to purchase a potential merchant's receipts, Kapitus reviews the Agreement signed by Debtor/Defendant, both on behalf of Merchant and as Guarantor, that contains certain written representations about both the Merchant and Debtor/Defendant's financial situation, operational plans, and intentions. Because Kapitus's funding process is truncated from that of a standard financing institution as is typical for the alternative financing industry, Kapitus relies heavily upon a Debtor/Defendant's representations and warranties made both on behalf of Merchant and as Guarantor in the Agreement as a whole, including, but not limited to, those with the stand-alone Representations and Acknowledgements. In fact, Kapitus's countersignature to the Agreement and funding are the last steps in the process.

44.    Prior to funding under the Agreement, the Debtor/Defendant executed a Representations and Acknowledgments form ("R&A") pursuant to which the Debtor/Defendant acknowledged and represented to Kapitus, in part, that:

a.  Debtor/Defendant was the authorized representative of the business / Merchant;

b.  Debtor/Defendant was the authorized signatory on the business / Merchant's bank account;

c.  Debtor/Defendant did not anticipate closing or selling the Merchant for any reason over the next 12 months;

d.  Debtor/Defendant did not plan to file for bankruptcy protection in the next 12 months for either the Merchant or herself, personally;

e.  The business / Merchant did not have a current financing product that obligated the business to make payments on a less than monthly basis that had not been disclosed to Kapitus in writing in connection with [the] application for funding, nor had the business / Merchant taken on such an obligation since [submitting the] application for funding to Kapitus nor did the business/Merchant intend to do so, without Kapitus' written consent.

f.  Neither the business / Merchant or Debtor/Defendant was in arrears on any business or personal loans or other financial obligations, except as previously disclosed to Kapitus in writing;

g.  No taxing or other authorities had filed any liens as to Merchant or Debtor/Defendant, nor did Merchant or Debtor/Defendant have any unpaid tax obligations, except as previously disclosed to Kapitus in writing;

h.  All information that the Debtor/Defendant provided to Kapitus to obtain financing accurately reflected the current ownership of the Merchant, Merchant's status and/or financial condition of the Merchant.

*See Representations and Acknowledgments*, **Exhibit 9**.

45.     Pursuant to the R&A, the Debtor/Defendant also acknowledged she: "[s]ubmitted the statements herein with the intent to obtain financing, Kapitus is relying on such statements to determine whether to approve the financing and that any false statements or misrepresentations made to obtain funding constitute fraud and will subject me and my business to legal action." *See Representations and Acknowledgments*, **Exhibit 9.**

46.     The Debtor/Defendant, both on behalf of Merchant and as Guarantor, made representations to Kapitus in the August 2022 Application, in the various financial and other documents she submitted in support of the August 2022 Application, and in the R&A.

47.     Kapitus relied upon the Debtor/Defendant's representations, both on behalf of Merchant and as Guarantor, made to Kapitus in the August 2022 Application, in the various financial and other documents she submitted in support of the August 2022 Application, and in the R&A, when Kapitus decided to enter into the Agreement with Merchant and fund the Agreement.

48.     Upon information and belief, Debtor/Defendant knew her representations to Kapitus in the August 2022 Application, in the various financial and other documents she submitted in support of the August 2022 Application, and in the R&A, were false when she made them both on behalf of the Merchant and as Guarantor.

49.    The August 2022 Application provides Debtor/Defendant was the 100% owner of Merchant. *See MYO Investments August 2022 Application (Redacted)*, **Exhibit 11**.

50.    On March 17, 2023, Debtor/Defendant disclosed to Kapitus that there was, or had been, another co-owner of the Merchant.

51.    Upon information and belief, March 17, 2023, was the first time Debtor/Defendant disclosed to Kapitus that there was, or had been, another co-owner of the Merchant.

52.    Pursuant to the information available via the Texas Secretary of State's Office, Merchant is listed as having two "directors," the Debtor/Defendant and Cynthia K. Smith. *See MYO Investments TX SOS Search Dated November 2023*, p. 1, Exhibit 1.

53.    Upon information and belief, contrary to the Debtor/Defendant's representations, made both on behalf of Merchant and as Guarantor, made to Kapitus in the August 2022 Application, in the various financial and other documents she submitted in support of the August 2022 Application, and in the R&A, the Merchant as well as Debtor/Defendant had been in a precarious financial position for some time.

54.    On December 13, 2022—a mere three and one half months after funding— Debtor/Defendant authorized a request she had made on behalf of Merchant to Kapitus to temporarily modify the ACH debits to Merchant's Account so that the payments would be reduced by fifty (50)% for four weeks and then revert to the initial payment amount thereby extending the payment period. *See December 13, 2022 Blalock Email Correspondence (Redacted)*, **Exhibit 19**.

55.    Upon information and belief, contrary to the Debtor/Defendant's representations, both on behalf of Merchant and as Guarantor, made to Kapitus in the August 2022 Application, in the various financial and other documents she submitted in support of the August 2022

Application, and in the R&A, Debtor/Defendant and/or the Merchant's financial condition was
not accurately or adequately disclosed to Kapitus.

56.    Alternatively, upon information and belief, contrary to the Debtor/Defendant's
representations, both on behalf of Merchant and as Guarantor, to Kapitus in the August 2022
Application, in the various financial and other documents she submitted in support of the August
2022 Application, and in the R&A, Debtor/Defendant and/or the Merchant intended to use the
funding from Kapitus for improper, non-business purposes.

57.    In reliance on the representations made to Kapitus by Debtor/Defendant, both on
behalf of Merchant and as Guarantor, in the August 2022 Application, in the various financial and
other documents she submitted in support of the August 2022 Application, and in the R&A,
Kapitus agreed to purchase certain of Merchants' Receipts, as outlined above.

58.    Kapitus relied on Debtor/Defendant's representations, both on behalf of Merchant
and as Guarantor, to Kapitus in the August 2022 Application, in the various financial and other
documents she submitted in support of the August 2022 Application, and in the R&A provided
by Debtor/Defendant to Kapitus.

59.    Kapitus would not have funded the Agreement but for Debtor/Defendant's
representations, both as Guarantor and on behalf Merchant, made to Kapitus in the August 2022
Application.

60.    Kapitus would not have funded the Agreement but for Debtor/Defendant's
representations, both as Guarantor and on behalf Merchant, made to Kapitus in the various
financial and other financial documents submitted in support of the August 2022 Application.

61.     Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the R&As and outlined above.

**C.     Debtor/Defendant's Misrepresentations to Kapitus in the Agreement**

62.     To allow Kapitus to collect its purchased Receipts, the Agreement required Merchant to use <u>only one</u> account to deposit all Receipts collected by Merchant, which was designated by the parties in the Agreement and fully accessible to Kapitus (the "Account"). *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 4**; *Sale Terms and Conditions*, §§ 1.3 (Authorization to Debit), 2.6, pp. 1 & 3, **Exhibit 5**.

63.     The Agreement entitled Kapitus to collect a weekly amount of $2,194.00 (the "Specified Weekly Amount") or in a variable amount equal to 2.4% (the "Specified Percentage") from the Account until such time as Kapitus received payment in full of the Receipts Purchased Amount. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 4**; *Sale Terms and Conditions*, § 1.3 (Authorization to Debit), p. 1, **Exhibit 5**.

64.     The authorization for Kapitus to use the Account to make such transfers is irrevocable by Merchant without Kapitus's consent. *Sale Terms and Conditions*, § 1.3 (Authorization to Debit), p. 1, **Exhibit 5**.

65.     To avoid disruption, the Agreement prohibited changes to the Account or the designation of Account except with Kapitus's express written consent. *Id.*

66.     By entering into the Agreement, Debtor/Defendant, both on behalf of Merchant and as Guarantor, made the following representations, warranties, and covenants to Kapitus[4], among others:

---

[4]     Within the terms of the *Sale Terms and Conditions*: the terms "Seller" or "Merchant" refers to MYO Investments, Inc.; the term "Purchaser" refers to Plaintiff, Kapitus; the term Guarantor refers to Debtor/Defendant, Keri Blalock.

## II.   REPRESENTATIONS, WARRANTIES AND COVENANTS.

Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:

2.1   **Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor, and such future statements which will be furnished hereafter at the request of Purchaser, fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Seller or Guarantor (as applicable). Seller and Guarantor are current on any and all lease, rent or mortgage payments due. Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser. No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business. Neither the Seller nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Seller or Guarantor. Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership. Purchaser may request statements at any time during the performance of this Agreement and the Seller shall provide them to Purchaser within five (5) business days. Seller's failure to do so is a material breach of this Agreement.

****

2.3   **Authorization**. Seller, and the person(s) signing the Transaction Documents on behalf of Seller, have full power and authority to incur and perform the obligations under the Transaction Documents, all of which have been duly authorized.

****

2.5   **Tax Obligations**.  Seller is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to Purchaser. No federal, state, or local taxing authority has filed any lien against the assets of the Seller and/or Guarantor. Seller or Guarantor shall pay all taxes owed to federal, state, or local governments when due.

2.6   **Deposit Arrangements and Delivery of Receipts.** Without Purchaser's prior written consent, Seller will not (i) change the account designated for the delivery of Receipts; (ii) set up multiple accounts into which any of the Seller's receipts are deposited or otherwise transferred; (iii) block or stop payment on Purchaser's debit; (iv) permit any event to occur

that could cause diversion of any of Seller's receipts; (v) or take any other action that could have any adverse effect upon Seller's obligations under the Transaction Documents. Seller will batch out receipts with all payment processors on a daily basis.

2.7   **Change of Name or Location**. Seller will not conduct Seller's business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser.

****

2.9   **No Bankruptcy or Insolvency.**  Seller is solvent, no transfer of property is being made by Seller, and no obligation is being incurred by Seller in connection with the sale of Receipts with the intent to hinder, delay, or defraud either present or future creditors of Seller. Seller represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Seller. Seller further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10   **Other Financing. Seller shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent.**

2.11   **Unencumbered Receipts**. Seller has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens,   claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser.

****

2.13   **Business Purpose.** Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Seller is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.14    **Default Under Other Contracts**. Seller's execution of and/or performance under this Agreement will not cause or create an event of default by Seller under any contract with another person or entity.

2.15.    **Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

\*\*\*\*

2.16 **Accuracy of Information**. All information provided by Seller and Guarantor to Purchaser in the Transaction Documents, in any application, in all other Seller forms and in response to any request by Purchaser for information whether oral or in writing, is true, accurate and complete in all respects.

\*\*\*\*

## USE OF CERTIFICATION OF PROCEEDS

This Use of Proceeds Certification is part of (and incorporated by reference into) the Purchase Agreement.

Each signatory below, on behalf of each Seller or Guarantor, hereby certifies the following to the Purchaser:

1.    The entirety of the Purchase Price will be used in the ordinary course of business.

2.    The entirety of the Purchase Price will be used exclusively for a Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Purchase Agreement refers solely to the purchase and acquisition of specific products or services used for the following purposes only: (i) working capital, (ii) business insurance (but not self-insurance programs), (iii) franchise fees, (iv) employee training, (v) the purchase of equipment, (vi) inventory, (vii) business supplies and raw materials, and (viii) the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include: (a) payment for, or purchase of, any items, goods, materials real property, personal property or services for personal, individual or household use; or (b) use of funds for any proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State

law) and/or any other legal proceeding or alternative dispute resolution proceeding.

*See Sale Terms and Conditions*, pp.3-4, 8, **Exhibit 5**. (Emphasis in original).

67.    In executing the Agreement, Debtor/Defendant, both on behalf of Merchant and as Guarantor, further represented and warranted, in part: "**If any information provided is false or misleading, Seller shall be held liable for fraud in the inducement and fraud and Guarantor(s) shall be personally liable for the Seller's obligations**." *See Forward Purchase Agreement*, p. 2, **Exhibit 4**. (Emphasis in original).

68.    Upon information and belief, the Debtor/Defendant made numerous misrepresentations to Kapitus in the Agreement, both on behalf of Merchant and as Guarantor, to induce Kapitus to fund the Purchase Price to the Merchant, including, but not limited to, the following:

a.   Misrepresentations regarding the financial condition of Seller/Merchant and Guarantor, and/or omitted material adverse changes in the condition, operation and ownership of the Seller/Merchant (*Sale Terms and Conditions*, p. 3, § 2.1, **Exhibit 5**);

b.   Misrepresentations regarding the Seller/Merchant's current and future compliance with all federal state and local tax laws and obligations (*Id.*, p. 3, § 2.5);

c.   Misrepresented Seller/Merchant would not prevent payment of Kapitus's debits, permit diversion of the Seller/Merchant's receipts, or engaged in actions that had an adverse effect upon Seller/Merchant's obligations under the Agreement (*Id.*, p. 3, § 2.6);

d.   Misrepresented Seller/Merchant would use one account for the Receipts and prohibited Kapitus from access to its purchased Receipts (*Id.*);

e.   Misrepresented Seller/Merchant would not conduct business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser. (*Id.*, p. 3, § 2.7);

f.   Misrepresented Seller/Merchant was solvent and did not intend to file bankruptcy (*Sale Terms and Conditions*, p. 3, § 2.9, **Exhibit 5**);

g.   Misrepresented Seller/Merchant would not enter into **any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent.** (*Id*., p. 3, § 2.10);

h.   Misrepresented Seller/Merchant had good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser. (*Id*., p. 4, § 2.11);

i.   Misrepresented Seller/Merchant would use the Purchase Price under the Agreement for business purposes and not as a consumer for personal, family or household purposes. (*Id.* p. 3, § 2.13; Use of Proceeds Certification); and

j.   Misrepresented Seller/Merchant would not (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller/Merchant; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser (*Id.* p. 4, § 2.15).

69.   The Debtor/Defendant as Guarantor further represented to Kapitus her personal guaranty of performance of the representations, warranties, and covenants made in Agreement and outlined, in part above: "**PERSONAL GUARANTY OF PERFORMANCE**. Each undersigned Guarantor hereby unconditionally guarantees to Purchaser the Merchant's performance of all of the representations, warranties, covenants made by Seller in the Purchase Agreement, the Sale Terms and Conditions, the Security Agreement, Guaranty, and Agreement to Arbitrate…". *See Personal Guaranty*, ¶ 1, p. 1, **Exhibit 7**.

70.   On August 26, 2022, in reliance on the representations, warranties, and covenants made in Agreement by the Debtor/Defendant on behalf of both Merchant and as Guarantor, Kapitus agreed to purchase certain of Merchant's Receipts and funded the Purchase Price to Merchant pursuant to the terms and conditions set forth in the Agreement.

71.     Kapitus reasonably and justifiably relied on Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus in the Agreement.

72.     Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the Agreement and outlined above.

73.     Upon information and belief, Debtor/Defendant knew her representations as both the representative of the Merchant and as Guarantor made to Kapitus, including, but not limited to, those outlined above, were false when she made them.

74.     Upon information and belief, Debtor/Defendant as both the representative of the Merchant and as Guarantor never intended to honor the Agreement.

75.     The Agreement also granted Kapitus a blanket lien on Merchant's assets, including but not limited to: all accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chose in action, chattel paper, instruments, inventory, goods, equipment, supplies, furniture, cash, and general intangibles (collectively, the "Collateral"). *See Security Agreement and Guaranty*, p. 1, **Exhibit 6**.

76.     On August 27, 2022, Kapitus perfected its lien by filing a Uniform Commercial Code ("UCC") financing statement with the Secretary of State for the State of Texas (the "Kapitus UCC-1"). *See UCC Financing Statement*, **Exhibit 12**.

**D.    Debtor/Defendant's Misrepresentations Regarding Obligations to Financial Institutions and Creditors Other Than Plaintiff**

77.     Upon information and belief, at the time the Agreement with Plaintiff was being negotiated, Merchant may have had undisclosed balance(s) with another financial source(s) that took payments on less than a monthly basis.

78.    Prior to funding under the Agreement, Debtor/Defendant, as Guarantor and on behalf of Merchant, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

    a.    Seller/Merchant would not enter into **any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent.**

    b.    Seller/Merchant had good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser.

*Sales Terms and Conditions* p. 3-4, §§ 2.10 – 2.11, **Exhibit 5**. (Emphasis in original).

79.    Prior to funding under the Agreement, Debtor/Defendant, as Guarantor and on behalf of Merchant, made the following written representations, warranties, and covenants to Kapitus via the R&As:

    a.    The business / Merchant did not have a current financing product that obligated the business to make payments on a less than monthly basis that had not been disclosed to Kapitus in writing in connection with [the] application for funding, nor had the business / Merchant taken on such an obligation since [submitting the] application for funding to Kapitus nor did the business/Merchant intend to do so, without Kapitus' written consent.

    b.    Neither the business / Merchant or Debtor/Defendant was in arrears on any business or personal loans or other financial obligations, except as previously disclosed to Kapitus in writing;

    c.    All information that the Debtor/Defendant provided to Kapitus to obtain financing accurately reflected the current ownership of the Merchant, Merchant's status and/or financial condition of the Merchant.

*See Representations and Acknowledgments*, **Exhibit 9**.

80.    On August 25, 2022, Debtor/Defendant, as Guarantor and on behalf of Merchant, signed the Agreement with Kapitus. *See generally*, *Agreement*, **Exhibits 4-9**.

81.    On August 26, 2022, Kapitus funded the Agreement with the Merchant and Debtor/Defendant. *See MYO Investments, Merchant Statement of Activity (Redacted)*, **Exhibit 10**.

82.    As a condition of Kapitus' funding of the Agreement with Merchant, Merchant was required to provide a payoff statement as to its outstanding balance with FORA Financing, the outstanding balance owed to FORA Financing was paid off as part of Kapitus' funding of Merchant, and Kapitus agreed to take a "second" position behind OnDeck Capital based on its review of the August 2022 Application, the financial and other documents submitted by Debtor/Defendant in support of the  August 2022 Application, and the R&As.

83.    Debtor/Defendant, as Guarantor and on behalf of Merchant was aware of the requirements and limitation, outlined above, in both the R&A and the Agreement regarding additional financing and Kapitus' written consent as to the same.

84.    According to the Merchant's Schedule E/F, the Merchant has business debts to NewCo. Capital Group VI LLC ("NewCo Capital"). *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 26, **Exhibit 2**.

85.    Merchant's Schedule E/F does not show when Merchant's business debt to NewCo. Capital was incurred. *Id*.

86.    On or around September 19, 2022, less than one (1) month after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor) entered into an agreement pursuant to which NewCo Capital purchased Merchant's future receivables. *See NewCo Capital Complaint*, **Exhibit 13**; *NewCo Capital Agreement dated September 24, 2019 (Redacted),* **Exhibit 14**.

87.    On or around September 19, 2022, less than one (1) month after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor) sold /

further encumbered Merchant's future receivables to NewCo Capital without Kapitus's prior written consent as required under the Agreement. *See Sales Terms and Conditions*, p. 3-4, §§ 2.10 – 2.11, **Exhibit 5**; *NewCo Capital Complaint*, **Exhibit 13**; *NewCo Capital Agreement dated September 24, 2019 (Redacted),* **Exhibit 14**.

88.     Debtor/Defendant did not disclose the NewCo Capital Agreement to Kapitus as required under the Agreement. *See Sales Terms and Conditions*, pp. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

89.     On or around September 19, 2022, Merchant (as Borrower) and Debtor/Defendant (as Guarantor) sold / further encumbered Merchant's future receivables to NewCo Capital without Kapitus's prior written consent as required under the R&As. *See Representations and Acknowledgments*, **Exhibit 9**; *NewCo Capital Agreement dated September 24, 2019 (Redacted),* **Exhibit 14**.

90.     The NewCo Capital Agreement required Merchant to make daily batch out payments i.e. payments on less than monthly basis without Kapitus's prior written consent as required under the R&As. *See Representations and Acknowledgments*, **Exhibit 9**; *NewCo Capital Agreement dated September 24, 2019 (Redacted),* **Exhibit 14**.

91.     Debtor/Defendant did not disclose the NewCo Capital Agreement to Kapitus as required under the R&As. *Id*.

92.     According to the Merchant's Schedule E/F, the Merchant has business debts to Everest Business Funding / EBF Holding, LLC ("EBF"). *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 22, **Exhibit 2**.

93.     Merchant's Schedule E/F does not show when Merchant's business debt to EBF was incurred. *Id*.

94.     Upon information and belief, on or around October 6, 2022, less than two (2)

months after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor) incurred a debt to EBF. *See Merchant Statement Dated October 31, 2022 (Redacted),* p. 2, **Exhibit 15**.

95.    Debtor/Defendant did not disclose the EBF debt to Kapitus as required under the Agreement. *See Sales Terms and Conditions*, pp. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

96.    EBF required Merchant to make daily batch out payments i.e. payments on less than monthly basis without Kapitus's prior written consent as required under the R&As. *See Representations and Acknowledgments*, **Exhibit 9**; *Merchant Statement Dated October 31, 2022 (Redacted),* pp. 3-11, **Exhibit 15**

97.    Debtor/Defendant did not disclose the EBF debt to Kapitus as required under the R&As. *Id*.

98.    According to the Merchant's Schedule E/F, the Merchant has business debts to Forward Financing. *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 23, **Exhibit 2**.

99.    Merchant's Schedule E/F does not show when Merchant's business debt to Forward Financing was incurred. *Id*.

100.    Upon information and belief, in November 2022, approximately three (3) months after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor) incurred a debt to Forward Financing. *See Merchant Statement Dated November 30, 2022 (Redacted),* p. 9, **Exhibit 16**.

101.    Debtor/Defendant did not disclose the Forward Financing debt to Kapitus as required under the Agreement. *See Sales Terms and Conditions*, pp. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

102.    Forward Financing required Merchant to make daily batch out payments i.e. payments on less than monthly basis without Kapitus's prior written consent as required under

the R&As. *See Representations and Acknowledgments*, **Exhibit 9**; *Merchant Statement Dated November 30, 2022 (Redacted),* pp. 9-12, **Exhibit 16**.

103.    Debtor/Defendant did not disclose the Forward Financing debt to Kapitus as required under the R&As. *Id*.

104.    According to the Merchant's Schedule E/F, the Merchant has business debts to Swift Funding Source ("Swift"). *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 31, **Exhibit 2**.

105.    Merchant's Schedule E/F does not show when Merchant's business debt to Swift was incurred. *Id*.

106.    Upon information and belief, the agreement for Merchant's business debt to Swift existed at least as of December 6, 2022, just over three (3) months after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor). *See Merchant Statement Dated December 31, 2021 (Redacted),* p. 2, **Exhibit 17**.

107.    Debtor/Defendant did not disclose the Swift debt to Kapitus as required under the Agreement. *See Sales Terms and Conditions*, p. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

108.    Upon information and belief, Swift required Merchant to weekly batch out payments i.e. payments on less than monthly basis without Kapitus' prior written consent as required under the R&As. *See Representations and Acknowledgments*, **Exhibit 9**; *See Merchant Statement Dated December 31, 2022 (Redacted),* pp. 3-10, **Exhibit 17**.

109.    Debtor/Defendant did not disclose the Swift debt to Kapitus as required under the R&As. *Id*.

110.    According to the Merchant's Schedule E/F, the Merchant has business debts to GFE NY, LLC d/b/a Global Funding Experts ("GFE"). *See In Re MYO Investments, Voluntary Petition*, ECF 1, p. 23, **Exhibit 2**.

111.    Merchant's Schedule E/F does not show when Merchant's business debt to GFE was incurred. *Id*.

112.    Upon information and belief, the agreement for Merchant's business debt to GFE existed at least as of December 9, 2022, just over three (3) months after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor). *See Merchant Statement Dated December 31, 2022 (Redacted)*, p. 4, **Exhibit 17**.

113.    Debtor/Defendant did not disclose the GFE debt to Kapitus as required under the Agreement. *See Sale Terms and Conditions*, pp. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

114.    Upon information and belief, GFE required Merchant to weekly batch out payments i.e. payments on less than monthly basis without Kapitus's prior written consent as required under the R&As. *See Representations and Acknowledgments*, **Exhibit 9**; *See Merchant Statement Dated December 31, 2022 (Redacted)*, pp. 4-10, **Exhibit 17**.

115.    Debtor/Defendant did not disclose the GFE debt to Kapitus as required under the R&As. *Id*.

116.    Debtor/Defendant and Merchant incurred some or all of the business debt owed to NewCo Capital, EBF, Forward Financing, Swift, GFE, and potentially others, after Debtor/Defendant entered into the Agreement with Kapitus on August 25, 2022.

117.     Debtor/Defendant and Merchant incurred some or all of the business debt owed to NewCo Capital, EBF, Forward Financing, Swift, GFE, and potentially others, after Debtor/Defendant represented to Kapitus that Merchant would "**not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than [Kapitus] without [Kapitus]'s written permission.**" *See Sale Terms and Conditions* p. 3, § 2.10, **Exhibit 5**. (Emphasis in original).

118.    Debtor/Defendant and Merchant incurred some or all of the business/financial obligations owed to NewCo Capital, EBF, Forward Financing, Swift, GFE, and potentially others, after Debtor/Defendant represented to Kapitus that Merchant did not have and would not take out a financing product that obligated the business / Merchant to make payments on a less than monthly basis without Kapitus's written consent. *See Representations and Acknowledgments*, **Exhibit 9**.

119.    Upon information and belief, despite representing otherwise, Debtor/Defendant and Merchant entered into alternative financing agreements with NewCo Capital, EBF, Forward Financing, Swift, GFE, and potentially others, shortly after entering the Agreement with Kapitus, and potentially further encumbered Merchant's Receipts without Kapitus's written consent.

120.    Upon information and belief, Debtor/Defendant and Merchant entered into alternative financing agreements with NewCo Capital, EBF, Forward Financing, Swift, GFE, and potentially others, shortly after entering the Agreement with Kapitus, because Merchant was not as profitable or as solvent as represented to Kapitus in in the August 2022 Application, during the August 2022 Application process via in the various financial and other documents she submitted in support of the August 2022 Application, in the R&A, and in the Agreement.

    **E.**    **Debtor/Defendant's Undisclosed First Home Bank (SBA) Loan and COVID-19 Economic Injury Disaster Loan for Merchant**

121.    Prior to funding under the Agreement, Debtor/Defendant, as Guarantor and on behalf of Merchant, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

    **II.**    **REPRESENTATIONS, WARRANTIES AND COVENANTS**.
Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:

                             ****

2.1    **Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor, and such future statements which will be furnished hereafter at the request of Purchaser, fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Seller or Guarantor (as applicable). Seller and Guarantor are current on any and all lease, rent or mortgage payments due. Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser. No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business. Neither the Seller nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Seller or Guarantor. Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership. Purchaser may request statements at any time during the performance of this Agreement and the Seller shall provide them to Purchaser within five (5) business days. Seller's failure to do so is a material breach of this Agreement.

****

2.10    **Other Financing.** **Seller shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent.**

*See Sale Terms and Conditions*, p. 3*, §§ 2.1, 2.10,* **Exhibit 5**. (Emphasis in original).

122.    Prior to funding under the Agreement, the Debtor/Defendant, as Guarantor and on behalf of Merchant, also made the following representations and acknowledgments to Kapitus:

¶ 11.    All information that I provided to Kapitus to obtain financing for my business accurately reflects the … financial condition of my business.

*See Representations and Acknowledgments*, ¶ 11, p. 1, **Exhibit 9**; *see also Sale Terms and Conditions*, ¶ 2.1, **Exhibit 5**. In addition, the Debtor/Defendant, as Guarantor and on behalf of Merchant, also made the following representations and acknowledgments to Kapitus:

Each signatory represents and warrants that: (1) he or she is authorized to enter into this sale, legally binding the Seller to deliver the Receipts as agreed, and (2) all information provided herein, in the application, in any documents submitted, and in any interviews conducted during the underwriting of the sale, including without limitation any financial information, are true, accurate and complete in all respects. Seller and Guarantor(s) expressly acknowledge and agree that Purchaser and Servicer are relying on such representations and warranties when determining to purchase the Receipts and that the accuracy thereof is a material condition of the Transaction Documents. If any information provided is false or misleading, Seller shall be held liable for fraud in the inducement and fraud and Guarantor(s) shall be personally liable for the Seller's obligations.

*See Forward Purchase Agreement*, p. 2, **Exhibit 4**.

123.    On August 26, 2022, in reliance on the representations, warranties, and covenants made by the Debtor/Defendant, as Guarantor and on behalf of Merchant, in the Agreement and the R&As, Kapitus funded the Purchase Price to Merchant pursuant to the terms and conditions set forth in the Agreement. *See Merchant Statement of Activity (Redacted)*, **Exhibit 10**.

124.    Upon information and belief, on or around October 7, 2022, less than two (2) months after entering into the Agreement with Kapitus, Merchant (as Borrower) and Debtor/Defendant (as Guarantor) incurred a debt to First Home Bank. *See Merchant Statement Dated October 31, 2022 (Redacted),* p. 3, **Exhibit 15**.

125.    Debtor/Defendant did not disclose the First Home Bank debt to Kapitus as required under the Agreement. *See Sale Terms and Conditions*, pp. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

126.    Debtor/Defendant did not disclose the First Home Bank debt to Kapitus as required under the R&As. *Id*.

127.    Upon information and belief, Debtor/Defendant, on behalf of Merchant, applied for and received a COVID-19 Economic Injury Disaster Loan ("EIDL"). S*ee In Re MYO Investments, Voluntary Petition*, ECF 1, p. 29, **Exhibit 2**.

128.    Merchant's Schedule E/F does not show when Merchant's EIDL debt was incurred. *Id*.

129.    Upon information and belief, the agreement Merchant's EIDL debt was incurred after Debtor/Defendant, as Guarantor and on behalf of Merchant, entered into the Agreement with Kapitus on August 25, 2022.

130.    Upon information and belief, Debtor/Defendant did not disclose the EIDL debt to Kapitus as required under the Agreement. *See Sale Terms and Conditions*, pp. 3-4, §§ 2.10 – 2.11, **Exhibit 5**.

131.    Upon information and belief, Debtor/Defendant did not disclose the EIDL debt to Kapitus as required under the R&As. *Id.*

132.    Upon information and belief, Merchant incurred EIDL debt because Merchant was not as profitable or as solvent as represented to Kapitus in in the August 2022 Application, during the August 2022 Application process via in the various financial and other documents she submitted in support of the August 2022 Application, in the R&A, and in the Agreement.

133.    Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the R&As and outlined above.

134.    Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the Agreement and outlined above.

**F.    Debtor/Defendant's Undisclosed Tax Obligations**

135.    Prior to funding under the Agreement, Debtor/Defendant, as Guarantor and on behalf of Merchant, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

**II.    REPRESENTATIONS, WARRANTIES AND COVENANTS**.
Seller and Guarantor represents, warrants and covenants that as of this date
and during the term of the Agreement:

****

2.5    **Tax Obligations**.  Seller is currently in compliance with all federal
state and local tax laws, has filed all returns, and has paid all taxes due,
except as disclosed to Purchaser…Seller or Guarantor shall pay all taxes
owed to federal, state, or local governments when due.

*See Sale Terms and Conditions*, p. 3*, §* 2.5, **Exhibit 5**.

136.    Prior to funding under the Agreement, the Debtor/Defendant, as Guarantor and on

behalf of Merchant, made the following representations and acknowledgments to Kapitus:

¶ 10.  **NO taxing or other authorities have filed any liens, nor do I have
any unpaid taxing obligations**, expect as previously disclosed to Kapitus in
writing.

*See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 9**. (Emphasis in original).

137.    According to the Merchant's Schedule E/F, the Merchant has unpaid business sales

tax obligations to the State of Texas. *See In Re MYO Investments, Voluntary Petition*, ECF 1, p.

31, **Exhibit 2**.

138.    Merchant's Schedule E/F does not show when Merchant's sales tax obligations to

the State of Texas were incurred. *Id*.

139.    Upon information and belief, Debtor/Defendant did not disclose the sales tax

obligations owed to the State of Texas to Kapitus as required under the Agreement. *See Sale Terms*

*and Conditions*, p. 3*, §* 2.5, **Exhibit 5**.

140.    Upon information and belief, Merchant failed to pay all taxes owed to federal, state,

or local governments when due. *See Sale Terms and Conditions*, p. 3*, §* 2.5, **Exhibit 5**; *but cf.*, *In*

*Re MYO Investments, Voluntary Petition*, ECF 1, p. 31, **Exhibit 2**.

141.    Upon information and belief, Debtor/Defendant did not disclose the unpaid sales tax obligations owed to the State of Texas to Kapitus as required under the R&As. *See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 9**.

142.    According to the Debtor/Defendant's Schedule E/F, the Debtor/Defendant has unpaid tax obligations owed to the Internal Revenue Service incurred in 2022. (Case No. 23-42207, ECF 1, p. 32).

143.    Upon information and belief, Debtor/Defendant, as Guarantor, did not disclose the unpaid tax obligations owed to the Internal Revenue Service to Kapitus as required under the Agreement. *See Sale Terms and Conditions*, p. 3*, §* 2.5, **Exhibit 5**.

144.    Upon information and belief, Debtor/Defendant, as Guarantor, failed to pay all taxes owed to federal, state, or local governments when due. *See Sale Terms and Conditions*, p. 3*, §* 2.5, **Exhibit 5**; *but cf.*, Case No. 23-42207, ECF 1, p. 32.

145.    Upon information and belief, Debtor/Defendant did not disclose the unpaid tax obligations owed to the Internal Revenue Service to Kapitus as required under the R&As. *See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 9**.

146.    Kapitus reasonably and justifiably relied on Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus in the Agreement and the R&As.

147.    Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the Agreement and outlined above.

148.    Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the R&As and outlined above.

### G.    Debtor/Defendant's Insufficient Funds In Specified Account

149.    Pursuant to the Agreement, Merchant was required to use only a single, specified depositing account to deposit all Receipts collected by Merchant, which was designated by the parties in the Agreement and fully accessible to Kapitus a/k/a the Account. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 4**; *Sale Terms and Conditions*, §§ 1.3, 2.6, pp.1 & 3, **Exhibit 5**.

150.    The Agreement entitled Kapitus to collect the Specified Percentage of the batch amount of Merchants' Receipts via ACH or the Specified Weekly Amount from the Account through debits from the Account until such time as Kapitus received payment in full of the Receipts Purchased Amount. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 4**; *Sale Terms and Conditions*, § 1.3, p. 1, **Exhibit 5**.

151.    The authorization for Kapitus to use the Account to make such transfers is irrevocable by Merchant without Kapitus's consent. *See Sale Terms and Conditions*, §§ 1.3, p. 1, **Exhibit 5**.

152.    To avoid disruption, the Agreement prohibited changes to the Account or the designation of Account except with Kapitus's express written consent. *See Sale Terms and Conditions*, § 1.3, p. 1, **Exhibit 5**.

153.    Merchant, via the Debtor/Defendant, was to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus and failure to do so was a default of the Agreement. *See Sale Terms and Conditions*, § 3.1, p. 4, **Exhibit 5**.

154.    On February 23, 2023, Debtor/Defendant, on behalf of the Merchant and as Guarantor, defaulted on the obligations under the Agreement when the ACH payment, as provided for in the Agreement, did not clear and was returned to Kapitus, on or around February 28, 2023,

due to insufficient funds, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement. *See Merchant Statement of Activity (Redacted)*, **Exhibit 10**.

155.    The last payment received by Kapitus from the Merchant, as provided for in the Agreement, was the ACH payment made on February 16, 2023, which cleared on February 17, 2023. *See Merchant Statement of Activity (Redacted)*, **Exhibit 10**.

156.    Debtor/Defendant, as Guarantor, failed to make payments to Kapitus as provided in the Agreement. *See Merchant Statement of Activity (Redacted)*, **Exhibit 10**.

157.    Kapitus reasonably and justifiably relied on Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus in the Agreement.

158.    Kapitus would not have funded the Agreement but for Debtor/Defendant's representations, both as Guarantor and on behalf Merchant, made to Kapitus as in the Agreement and outlined above.

### H.    Debtor/Defendant's Closing of Merchant's Business

159.    Debtor/Defendant, on behalf of Merchant and as Guarantor, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS**. Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> ****
>
> 2.1. **Financial Condition and Financial Information.** … No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business…Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership…
>
> ****

2.15.  **Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

*See Sale Terms and Conditions*, pp. 3-4, **Exhibit 5**. (Emphasis in original).

160.    On August 26, 2022, in reliance on the representations, warranties, and covenants made by the Debtor/Defendant, on behalf of Merchant and as Guarantor, Kapitus funded the Purchase Price to Merchant pursuant to the terms and conditions set forth in the Agreement. *See Merchant Statement of Activity (Redacted)*, **Exhibit 10.**

161.    On July 30, 2023, Debtor/Defendant filed a Voluntary Petition under Chapter 7 with this Court (Case No. 23-42207, ECF 1).

162.    According to Debtor/Defendant's Petition/Statement of Financial Affairs, Merchant has not ceased operations in that no date of closure for the Merchant's business is listed. (Case No. 23-42207, ECF 1, p. 50).

163.    On October 31, 2023, Merchant filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code. *See In Re MYO Investments, Voluntary Petition*, ECF 1, **Exhibit 2**.

164.    According to Merchant's Petition/Statement of Financial Affairs, Merchant has not ceased operations in that no date of closure for the Merchant's business is listed and revenue for calendar year 2023 is listed at $275,000.00.  *In Re MYO Investments, Voluntary Petition*, ECF 1, p. 38, **Exhibit 2**.

165.    However, pursuant to the information available via the Texas Secretary of State's Office, Merchant has forfeited its existence/dissolved. *See MYO Investments TX SOS Search Dated November 2023*, p. 1, **Exhibit 1**.

166.    Despite the aforementioned representations, warranties, and covenants made by the Debtor/Defendant, on behalf of Merchant and as Guarantor, Debtor/Defendant did not inform Kapitus of the change in Merchant's financial condition or that Merchant was ceasing operations. *See Sale Terms and Conditions*, §§ 2.1, 2.15, pp. 3-4, **Exhibit 5**.

167.    Upon information and belief, Debtor/Defendant, on behalf of Merchant and as Guarantor, may have sold or caused to be sold all or substantially all of the Merchant's assets without notice to Kapitus pursuant to the Agreement. *See Sale Terms and Conditions*, § 2.15, p. 4, **Exhibit 5**.

I.    **Debtor/Defendant's Use and/or Transfer of Kapitus's Collateral**

168.    Debtor/Defendant, on behalf of Merchant and as Guarantor, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

> **II.    REPRESENTATIONS, WARRANTIES AND COVENANTS. Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:**
>
> ****
>
> **2.7  Change of Name or Location**. Seller will not conduct Seller's business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser.
>
> ****
>
> **2.15.  Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

*See Sale Terms and Conditions*, §§ 2.7, 2.15, pp. 3-4, **Exhibit 5**. (Emphasis in original).

169.    BSMG Construction Management, LLC ("BSMG") is a limited liability company duly organized in the State of Texas with a principal office at 700 Lavaca Street, Suite 1401, Austin, TX 78701. *See BSMG TX SOS Search Dated November 2023*, **Exhibit 3**.

170.    Upon information and belief, BSMG also has a business address of 600 West 6th Street, Fort Worth, TX 76102. (Case No. 23-42207, ECF 1, p. 48).

171.    Upon information and belief, Debtor/Defendant owns at least 49% of BSMG.

172.    Upon information and belief, Debtor/Defendant is or was, at all relevant times, a director of BSMG. *See BSMG TX SOS Search Dated November 2023*, p. 2, **Exhibit 3**.

173.    Upon information and belief, at all relevant times, BSMG was also the employer of Debtor/Defendant. (Case No. 23-42207, ECF 1, p. 48).

174.    Upon information and belief, BSMG via Debtor/Defendant received fraudulent transfers from Debtor/Defendant by way of the use of Merchant's personal property subject to the valid lien filed by Kapitus. *See generally Merchant Statement Dated October 31, 2022 (Redacted)*, **Exhibit 15**; *Merchant Statement Dated November 30, 2022 (Redacted)*, **Exhibit 16**; *Merchant Statement Dated December 31, 2022 (Redacted)*, **Exhibit 17**.

175.    Upon information and belief, Kapitus has superior rights and interests in the property transferred to BSMG via Debtor/Defendant.

176.    Upon information and belief, BSMG via Debtor/Defendant used Merchant's property subject to the valid lien filed by Kapitus.

177.    Upon information and belief, Kapitus has superior rights and interests in the property used by BSMG.

178.    Upon information and belief, BSMG is also in possession of assets that were transferred to it by Debtor/Defendant to avoid the payment of the Purchased Receivables purchased by Kapitus and which rightfully belong to Kapitus.

179.    BSMG's possession of the property belonging to Kapitus, pursuant to its valid

lien and/or its ownership interest in the Purchased Receivables, subjects it owner/managing

member, Debtor/Defendant to claims for conversion, embezzlement, larceny, unjust enrichment

and receipt of fraudulent transfers and remedies including constructive trust.

### COUNT I
**Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(2)(A)**
**False Pretenses, False Representations, Actual Fraud as to Debtor/Defendant, Individually**

180.    Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the

same as though set forth herein.

181.    The Debtor/Defendant's liability to Kapitus, as alleged herein, is a debt for money

owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

182.    Debtor/Defendant obtained money and services by false pretenses, false

representations, and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

183.    Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debt by which a debtor

obtains money by false pretenses, false statements, or actual fraud shall not be dischargeable.

184.    Kapitus believes and alleges that the Debtor/Defendant, on behalf of Merchant and

as Guarantor, entered into the Agreement with the specific intent not to pay the Receipts Purchased

Amount to Kapitus.

185.    Kapitus believes and alleges that the Debtor/Defendant, on behalf of Merchant and

as Guarantor, made false statements and misrepresentations to Kapitus with the intent to induce

Kapitus to purchase Merchant's Receipts.

186.    As more fully detailed herein, upon information and belief, the Debtor/Defendant

made misrepresentations and/or material omissions of fact including, but not limited to, representing

that: (1) Merchant would not close without prior written notice to Kapitus; (2) Merchant would not

transfer or sell all or substantially all of the Merchant's assets or equity interests without prior written

notice to Kapitus; (3) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (4) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (5) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account; (6) Merchant would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than Kapitus without Kapitus's written permission; (7) Merchant would not conduct its business(es) under any name other than as disclosed to Kapitus or change any of its places of business without prior written notice to Kapitus; and (8) Merchant is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code.

187.    Kapitus justifiably relied on the Debtor/Defendant's representations, on behalf of Merchant and as Guarantor, when it entered into the Agreement and funded the Purchase Price to Merchant.

188.    Despite having made the above representations, among others, on behalf of Merchant and as Guarantor, to Kapitus in order to induce Kapitus to enter into the Agreement and purchase Merchant's Receipts, Debtor/Defendant, at a minimum:

    a.    Took out and failed to disclose additional financing to Kapitus;
    b.    Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;
    c.    Failed to provide Kapitus with irrevocable access to the Account for payment;
    d.    Prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement[5];
    e.    Closed the Merchant's operations; and
    f.    Transferred or sold the Merchant's assets.

---

[5] Exhibit 2 shows Merchant/Debtor having an account with Citizens National Bank of Texas ending in #9331 and that the account listed in Exhibits 15 -17, Citizens National Bank of Texas ending in #9231 is no longer open. However, Exhibit 2's listing of the account ending #9331 may be in error with the correct, open account for Merchant/Debtor ending in #9231.

189.    Upon information and belief, at the time the false, untrue, and/or misleading representations were made, the Debtor/Defendant knew Debtor/Defendant's representations made on behalf of Merchant and as Guarantor were false, untrue, and/or misleading.

190.    Upon information and belief, Debtor/Defendant intended to induce Kapitus to act or refrain from acting upon the Debtor/Defendant's false, untrue, and/or misleading representations and/or material omissions made on behalf of Merchant and as Guarantor.

191.    Kapitus justifiably relied upon Debtor/Defendant's false, untrue, and/or misleading representations and/or material omissions made on behalf of Merchant and as Guarantor.

192.    As a result of Debtor/Defendant's false, untrue, and/or misleading representations and/or material omissions made on behalf of Merchant and as Guarantor,  the Merchant obtained the Purchase Price from Kapitus, which purchase would not have been authorized by Kapitus if the Debtor/Defendant's false, untrue, misleading representations had not been made, or if material facts that were omitted and concealed, were actually disclosed.

193.    Kapitus suffered damages as a direct and proximate consequence of false, untrue, and/or misleading representations and/or material omissions made by the Debtor/Defendant on behalf of Merchant and as Guarantor.

194.    Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), Debtor/Defendant's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein and proof.

195.    Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint and interest under the contractual interest rate.

## COUNT II
**Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(2)(B)**
**Use Of A Statement In Writing That Is Materially False Respecting The Debtor's Or An**
**Insider's Financial Condition as to Debtor/Defendant, Individually**

196.     Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the same as though set forth herein.

197.     Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting the debtor or an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

198.     Debtor/Defendant's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

199.      The Debtor/Defendant is an insider of the Merchant pursuant to 11 U.S.C. § 101(31).

200.     Debtor/Defendant, on behalf of Merchant and as a Guarantor, did obtain money from Kapitus by the following written, materially false statements in the R&A and the Agreement, among others, respecting Merchant's financial condition upon which Kapitus reasonably relied in funding the Purchase Prince to Merchant, including, but not limited to: (1) Neither Debtor/Defendant nor Merchant planned to file for bankruptcy protection within the next 12 months; (2) Neither Debtor/Defendant nor Merchant were insolvent; (3) There were no material adverse changes, in the financial condition, operation, or ownership of Merchant; (4) Merchant's financial condition was accurately reflected to Kapitus; (5) Merchant would not close without prior written notice to Kapitus; (6) Merchant would not sell all or substantially all of the Merchant's assets or equity interests without prior written notice to Kapitus; (7) Merchant intended to use the funding amount for business purposes rather than personal, family, or

household purposes; (8) Neither Debtor/Defendant nor Merchant were in arrears with any of their creditors; (9) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (10) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account; and (11) Merchant would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than Kapitus without Kapitus's written permission.

201.    Despite having made the above representations, among others to Kapitus in order induce Kapitus to purchase Merchant's Receipts, Debtor/Defendant, both on behalf of Merchant and as Guarantor, at a minimum:

a.    Failed to disclose Merchant's true financial condition to Kapitus;
b.    Failed to disclose Debtor/Defendant's true financial condition to Kapitus;
c.    Took out and failed to disclose additional financing to Kapitus;
d.    Filed for bankruptcy within 12 months of funding under chapter 7 of the Bankruptcy Code on July 30, 2023 (Case No. 23-42207);
e.    Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;
f.    Failed to provide Kapitus with irrevocable access to the Account for payment;
g.    Prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement[6];
h.    Closed the Merchant's operations; and
i.    Transferred or sold the Merchant's assets.

202.    Upon information and belief, as fully detailed above, at the same time these representations, among others, were made by Debtor/Defendant, both on behalf of Merchant and as Guarantor, Debtor/Defendant knew these representations were materially false.

---

[6] Exhibit 2 shows Merchant/Debtor having an account with Citizens National Bank of Texas ending in #9331 and that the account listed in Exhibits 15 -17, Citizens National Bank of Texas ending in #9231 is no longer open. However, Exhibit 2's listing of the account ending #9331 may be in error with the correct, open account for Merchant/Debtor ending in #9231.

203.    Debtor/Defendant, both on behalf of Merchant and as Guarantor, caused these materially false statements to be made in writing, including, but not limited to publishing such statements in the August 2022 Application, the financial documents submitted to Kapitus in support of the application process, the R&A, and the Agreement.

204.    Kapitus reasonably relied on Debtor/Defendant's materially false written statements made by the Debtor/Defendant, both on behalf of Merchant and as Guarantor, in deciding to enter into the Agreement and fund the Purchase Price to Merchant.

205.    Kapitus suffered damages as a direct and proximate consequence of the materially false statements made by the Debtor/Defendant, both on behalf of Merchant and as Guarantor.

206.    As a result of these materially false written statements made by the Debtor/Defendant, both on behalf of Merchant and as Guarantor, the Merchant obtained from Kapitus, *inter alia*, the Purchase Price, which would not have been authorized by Kapitus if the materially false written statements had not been made by Debtor/Defendant.

207.    The Debtor/Defendant's activities described above constitute obtaining money by materially false written statements regarding an insider's financial condition, on which Kapitus reasonably relied, and which the Debtor/Defendant made with the intent to deceive.

208.    Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Debtor/Defendant's debt to Kapitus is non-dischargeable.

209.    Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint and the contractual rate of interest.

## COUNT III

### Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(4)
### Fraud Or Defalcation While Acting In A Fiduciary Capacity, Embezzlement, Or Larceny
### as to Debtor/Defendant, Individually

210.    Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the

same as though set forth herein.

211.    The Debtor/Defendant's liability to Kapitus, as alleged herein, is a debt "for fraud

or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning

of section 523(a)(4) of the Bankruptcy Code.

212.    Kapitus believes and alleges, Debtor/Defendant entered into the Agreement, both

on behalf of Merchant and as Guarantor, with the specific intent to take funds from Kapitus

without any intent to repay these funds.

213.    Pursuant to the R&A and the Agreement, Debtor/Defendant represented: (1) Neither

Debtor/Defendant nor Merchant planned to file for bankruptcy protection within the next 12 months;

(2) Neither Debtor/Defendant nor Merchant were insolvent; (3) There were no material adverse

changes, in the financial condition, operation, or ownership of Merchant; (4) Merchant's financial

condition was accurately reflected to Kapitus; (5) Merchant would not close without prior written

notice to Kapitus; (6) Merchant would not sell all or substantially all of the Merchant's assets or

equity interests without prior written notice to Kapitus; (7) Merchant intended to use the funding

amount for business purposes rather than personal, family, or household purposes; (8) Neither

Debtor/Defendant nor Merchant were in arrears with any of their creditors; (9) Merchant would

use one Account for payment under the Agreement and provide Kapitus with irrevocable access to

that Account for payment; (10) Merchant would ensure that funds adequate to remit payment to

Kapitus were kept in the Account; and (11) Merchant would not enter into any arrangement,

agreement or commitment for any additional financing, whether in the form of a purchase of

receivables or a loan to the business with any party other than Kapitus without Kapitus's written permission. Kapitus reasonably relied on these representations, among others, made by the Debtor/Defendant, both on behalf of Merchant and as Guarantor, in deciding to enter into the Agreement and fund the Purchase Price to Merchant.

214.    Despite having made the above representations, among others, to Kapitus to induce Kapitus to purchase Merchant's Receipts, Debtor/Defendant, on behalf of Merchant and as Guarantor, at a minimum:

  a. Failed to disclose Merchant's true financial condition to Kapitus;
  b. Failed to disclose Debtor/Defendant's true financial condition to Kapitus;
  c. Took out and failed to disclose additional financing to Kapitus;
  d. Filed for bankruptcy within 12 months of funding under chapter 7 of the Bankruptcy Code on July 30, 2023 (Case No. 23-42207);
  e. Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;
  f. Failed to provide Kapitus with irrevocable access to the Account for payment;
  g.  Prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement[7];
  h. Closed the Merchant's operations; and
  i. Transferred or sold the Merchant's assets.

215.    Upon information and belief, the Debtor/Defendant, on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent to transfer or hide the Purchase Price and Collateral and prevent Kapitus from collecting the obligations owed to it.

216.    Upon information and belief, Debtor/Defendant obtained the Purchase Price from Kapitus by committing fraud and defalcation while acting in a fiduciary capacity as the 100% owner and director of Merchant.

217.    Upon information and belief, Debtor/Defendant misappropriated portions of the Purchase Price and receivables for her own benefit by fraudulent intent or deceit.

---

[7] Exhibit 2 shows Merchant/Debtor having an account with Citizens National Bank of Texas ending in #9331 and that the account listed in Exhibits 15 -17, Citizens National Bank of Texas ending in #9231 is no longer open. However, Exhibit 2's listing of the account ending #9331 may be in error with the correct, open account for Merchant/Debtor ending in #9231.

218.    Upon information and belief, Debtor/Defendant used the Purchase Price/funds received and the receivables without explanation, reason, or purpose relating to Merchant's business, and failed to use Purchase Price/funds received for business materials as represented in the Agreement.

219.    Because of the insolvency of Merchant, the Debtor/Defendant had fiduciary obligations to Kapitus as a creditor.

220.    Members and/or managing member of a limited liability company owe fiduciary duties to the limited liability company's creditors when the limited liability company is insolvent or in the zone of insolvency.

221.    When a limited liability company becomes insolvent, the members and/or managing member stand in a trust relation towards creditors, and as trustees of company properties for the benefit of creditors. Hence, the members and/or managing member of an insolvent company are placed in a fiduciary relation to its creditors.

222.    The Debtor/Defendant was the sole and managing member of Merchant.

223.    Upon information and belief, Merchant was insolvent at the time it received the Purchase Price from Kapitus or became insolvent shortly thereafter. Therefore, the Debtor/Defendant owed fiduciary duties to manage Merchant's assets in trust for Merchant's creditors, including Kapitus.

224.    The Debtor/Defendant's failure to manage Merchant's assets is a breach of fiduciary duty.

225.    Upon information and belief, the Debtor/Defendant used her power as the sole and managing member of Merchant for the purpose of obtaining a preference or advantage to herself.

226.    Upon information and belief, the Debtor/Defendant misappropriated portions of Merchant's receipts for her own benefit.

227.    These were breaches of fiduciary duty owed to Kapitus.

228.    The Debtor/Defendant's actions in violation of these fiduciary duties constitute legal fraud.

229.    Virginia law governs the Agreement.

230.    Under Virginia law, an express trust can be found through the parties' actions and does not need to be in writing. All that is necessary is the unequivocal intent that the legal estate be vested in one person, to be held in some matter or for some purpose on behalf of another. A trust is created if the intention is that the money be kept or used as a separate fund for the benefit of the payor or a third person.

231.    An express trust is a fiduciary relationship with respect to property.

232.    Here, the parties intended to and did enter into an express trust, and Debtor/Defendant owed a fiduciary duty to Kapitus.

233.    Debtor/Defendant was supposed to hold Merchant's receipts in the Account for Kapitus' benefit. Upon information and belief, she did not do so.

234.    Kapitus sustained damages because of the Debtor/Defendant's fraud and defalcation while acting as a fiduciary, embezzlement and/or larceny of the funding and receivables.

235.    Upon information and belief, all the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of, or with the consent of, the Debtor/Defendant and thus the Debtor/Defendant is in breach of the Agreement giving Kapitus a right to recover damages.

236.     Debtor/Defendant's obligation to Kapitus is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable.

237.     Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the Debtor/Defendant's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein.

238.     Kapitus is also entitled to attorneys' fees and costs of suit incurred in prosecuting this Complaint and the contractual interest rate.

### COUNT IV
### Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(6)
### Willful And Malicious Injury By The Debtor/Defendant, Individually

239.     Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the same as though set forth herein.

240.     Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

241.     Kapitus believes and alleges Debtor/Defendant, both on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent not to use the Purchase Price proceeds for business purposes and/or to not pay Kapitus the Receipts Purchased Amount.

242.     In addition, Kapitus believes and alleges Debtor/Defendant, both on behalf of Merchant and as Guarantor, made false statements to Kapitus with the intent to induce Kapitus to transfer the Purchase Price.

243.     Further, upon information and belief, Debtor/Defendant, both on behalf of Merchant and as Guarantor, willfully and maliciously executed the Agreement and represented to Kapitus that: (1) Neither Debtor/Defendant nor Merchant planned to file for bankruptcy protection within the next 12 months; (2) Neither Debtor/Defendant nor Merchant were insolvent; (3) There were no material adverse changes, in the financial condition, operation, or ownership of

Merchant; (4) Merchant's financial condition was accurately reflected to Kapitus; (5) Merchant would not close without prior written notice to Kapitus; (6) Merchant would not transfer or sell all or substantially all of the Merchant's assets or equity interests without prior written notice to Kapitus; (7) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (8) Neither Debtor/Defendant nor Merchant were in arrears with any of their creditors; (9) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (10) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account; and (11) Merchant would not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than Kapitus without Kapitus's written permission. Kapitus justifiably relied on these representations.

244.    Kapitus justifiably relied on the Debtor/Defendant's representations made on behalf of Merchant and as Guarantor when it entered into the Agreement and transferred the Purchase Price to Merchant.

245.    In spite of having made the above representations, among others, to Kapitus to induce Kapitus to enter into the Agreement and purchase Merchant's Receipts, Debtor/Defendant, on behalf of Merchant and as Guarantor, at a minimum:

   a. Failed to disclose Merchant's true financial condition to Kapitus;
   b. Failed to disclose Debtor/Defendant's true financial condition to Kapitus;
   c. Took out and failed to disclose additional financing to Kapitus;
   d. Filed for bankruptcy within 12 months of funding under chapter 7 of the Bankruptcy Code on July 30, 2023 (Case No. 23-42207);
   e. Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;
   f. Failed to provide Kapitus with irrevocable access to the Account for payment;

  g. Prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement[8];

  h. Closed the Merchant's operations; and

  i. Transferred or sold the Merchant's assets.

246. Debtor/Defendant's activities on behalf of Merchant and as Guarantor described herein constitute willful and malicious conduct which resulted in damage to Kapitus.

247. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), the Debtor/Defendant's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein.

248. Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint and the contractual interest rate.

## COUNT V
### Fraud Against Debtor/Defendant, individually

249. Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the same as though set forth herein.

250. Upon information and belief, Debtor/Defendant, on behalf of Merchant and as Guarantor, obtained money and services by actual fraud under Virginia law.

251. Upon information and belief, Debtor/Defendant, on behalf of Merchant and as Guarantor, intentionally and knowingly, made false and material representations in the August 2022 Application, during the application process, in the R&A, and in the Agreement, as described above, and had no intention to honor the Agreement, including the Guaranty.

252. As fully detailed above, Debtor/Defendant, on behalf of Merchant and as Guarantor, made false statements in connection with the 2022 Application, the financial documents

---

[8] Exhibit 2 shows Merchant/Debtor having an account with Citizens National Bank of Texas ending in #9331 and that the account listed in Exhibits 15 -17, Citizens National Bank of Texas ending in #9231 is no longer open. However, Exhibit 2's listing of the account ending #9331 may be in error with the correct, open account for Merchant/Debtor ending in #9231.

submitted in support of the application process, and in connection with the warranties and representations included in the R&A as well as the Agreement, including the Guaranty.

253. Upon information and belief, Debtor/Defendant knew her statements made on behalf of Merchant and as Guarantor were false, and, as a direct and proximate cause of these intentional and material misrepresentations and omissions, intended to induce and did induce Kapitus to enter to the Agreement and tender the Purchase Price to Merchant.

254. Upon information and belief, Debtor/Defendant intended to induce Kapitus to act or refrain from acting upon Debtor/Defendant's false statements made on behalf of Merchant and as Guarantor.

255. Kapitus reasonably relied upon Debtor/Defendant's false statements made on behalf of Merchant and as Guarantor in entering into the Agreement and funding the Purchase Price to Merchant.

256. Kapitus has suffered damages as a direct and proximate consequence of the false representations made by Debtor/Defendant on behalf of Merchant and as Guarantor.

257. As a result of false statements and fraud by Debtor/Defendant, both on behalf of Merchant and as Guarantor, Merchant obtained the Purchase Price from Kapitus, which purchase Kapitus would not have authorized if the Debtor/Defendant's false representations had not been made or if material facts omitted and concealed by Debtor/Defendant had been disclosed.

258. On August 26, 2022, Kapitus funded the Purchase Price to Merchant as required under the Agreement, in reliance on the Debtor/Defendant's false and material representations made on behalf of Merchant and as Guarantor in the August 2022 Application, the financial documents submitted in support of the application process, and in connection with the warranties and representations included in the R&A and Agreement, including within the Guaranty.

259.    Debtor/Defendant, both on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent to take these funds from Kapitus without intent to repay the Purchase Price per the Agreement.

260.    Debtor/Defendant's statements and acts described above made both on behalf of Merchant and as Guarantor constitute actual fraud under Virginia law.

261.    Upon information and belief, Debtor/Defendant misappropriated significant portions of the Purchase Price and/or Receipts for her own benefit by fraudulent intent or deceit.

262.    Upon information and belief, Debtor/Defendant transferred the Purchase Price and/or Receipts into accounts not accessible by Kapitus.

263.    Upon information and belief, Debtor/Defendant used the Purchase Price and/or Receipts without explanation, reason, or purpose relating to Merchant's business.

264.    Upon information and belief, Debtor/Defendant closed the Specified Account to avoid making payments to Kapitus under the Agreement.

265.    Upon information and belief, Debtor/Defendant transferred the Purchase Price and/or Receipts into accounts other than the Specified Account to avoid making payments to Kapitus under the Agreement.

266.    Kapitus is entitled to an award of damages of $191,023.12, which represents the value of Receipts purchased and remaining owed to Kapitus, plus attorneys' fees, costs incurred, such other relief as the Court deems just and proper.

**<u>COUNT VI</u>**
**Conversion Against Debtor/Defendant, individually, and**
**BSMG Construction Management, LLC**

267.    Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the same as though set forth herein.

268.    Upon information and belief, BSMG via Debtor/Defendant received fraudulent transfers from Debtor/Defendant by way of the use of Merchant's personal property subject to the valid lien filed by Kapitus. *See generally Merchant Statement Dated October 31, 2022 (Redacted)*, **Exhibit 15**; *Merchant Statement Dated November 30, 2022 (Redacted)*, **Exhibit 16**; *Merchant Statement Dated December 31, 2022 (Redacted)*, **Exhibit 17.**

269.    Kapitus, pursuant to the Agreement, has an interest superior to the Debtor/Defendant, individually, and BSMG in the Receipts and other Collateral previously belonging to Merchant.

270.    Debtor/Defendant, individually, and as an owner/managing member of BSMG, without authorization, wrongfully assumed and exercised dominion and control over the Receipts and other Collateral of the Merchant.

271.    Kapitus was entitled to possession of the Receipts and other Collateral because of its superior interest under the Agreement and the related Kapitus UCC-1 filing.

272.    Upon information and belief, Debtor/Defendant, individually, and as an owner/managing member of BSMG has intentionally and without authority, assumed and exercised control over the Merchant's Receipts and other Collateral properly belonging to Kapitus, interfering with Kapitus's right of possession.

273.    Upon information and belief, Debtor/Defendant, individually, and as an owner/managing member of BSMG has utilized and depleted the Merchant's Receipts and other Collateral.

274.    Kapitus seeks damages from Debtor/Defendant, individually, and as an owner/managing member of BSMG because of her conversion, including judgment in the amount of $191,023.12, plus attorneys' fees, costs incurred, punitive damages, and such other relief as the Court deems just and proper.

## <u>COUNT VII</u>
**Fraudulent Transfer Against Debtor/Defendant, Individually,
and BSMG Construction Management, LLC**

275.    Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the

same as though set forth herein.

276.    Kapitus also asserts actual intent fraudulent transfer claims and constructive

fraudulent transfer claims against Debtor/Defendant, individually, and BSMG with respect to the

transfer of any and all assets to BSMG.

277.    Upon information and belief, BSMG via Debtor/Defendant received fraudulent

transfers from Debtor/Defendant by way of the use of Merchant's personal property subject to the

valid lien filed by Kapitus. *See generally Merchant Statement Dated October 31, 2022 (Redacted)*,

**Exhibit 15**; *Merchant Statement Dated November 30, 2022 (Redacted)*, **Exhibit 16**; *Merchant*

*Statement Dated December 31, 2022 (Redacted)*, **Exhibit 17.**

278.    Under Va. Code Ann. § 55-80 (and any other similar state law applicable here

under), a transfer is voidable as to a creditor, if the debtor made the transfer or incurred the

obligation with actual intent to hinder, delay, or defraud a creditor of the debtor, or if the debtor

made the transfer or incurred the obligation without fair consideration or receiving reasonably

equivalent value.

279.    Upon information and belief, Debtor/Defendant, individually, and as an

owner/managing member of BSMG intended to hinder, delay, or defraud Kapitus by transferring

the Receipts and other Collateral to BSMG.

280.    Upon information and belief, in addition to those facts specifically pled above, many

of the additional factors considered as probative of fraudulent transfer under the applicable law are

present in this case. For example: (a) the transfers were concealed; (b) the Debtor/Defendant's

business operations with the Merchant were folding and the Debtor/Defendant was in the process of

re-establishing a new business within the same business market; (c) the Debtor/Defendant concealed assets and information from Kapitus; (d) the Debtor/Defendant received little, if any, value in exchange for the transfer/sale of assets; (e) the transfers occurred when the Debtor/Defendant was insolvent; (f) Debtor/Defendant effectively retained possession of the property.

281.    BSMG was on actual notice of Kapitus' security interest in the Merchant's Receipts and other Collateral because its 49% owner/director, the Debtor/Defendant, was aware of Kapitus' security interest in the Merchant's Receipts and other Collateral.

282.    The elements of "actual intent" are satisfied by the facts set forth herein.

283.    Upon information and belief, Debtor/Defendant transferred the Merchant's Receipts and other Collateral to Debtor/Defendant, individually, and to BSMG without fair consideration or receiving reasonably equivalent value.

284.    Upon information and belief, Debtor/Defendant, individually, and/or BSMG did not give the Merchant any consideration for the Receipts and other Collateral.

285.    The elements of a "constructive" fraudulent conveyance are satisfied by the facts set forth herein.

286.    Kapitus is entitled to avoid all of the transfers of the Merchant's Receipts and other Collateral to Debtor/Defendant, individually, and/or BSMG under applicable state law.

287.    Pursuant to Va. Code Ann. § 55-80, judgment should be entered avoiding the transfers of the Receipts and the Collateral to Debtor/Defendant, individually, and/or BSMG, entering judgment against Debtor/Defendant, individually, and/or BSMG in favor of Kapitus for the value of the property transferred, plus interest, attorney's fees and costs.

## COUNT VIII
### Replevin Against Debtor/Defendant, individually,
### and BSMG Construction Management, LLC

288.     Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the same as though set forth herein.

289.     The Agreement and Guaranty are valid and enforceable agreements.

290.     Debtor/Defendant has defaulted under her obligations under the Agreement and Guaranty by virtue of, *inter alia*, the events identified above and failing to pay all amounts due thereunder and thus, Kapitus has been damaged.

291.     Kapitus has a duly perfected interest in Receipts and other Collateral.

292.     In accordance with the Agreement, Kapitus is entitled to exercise all rights and remedies available to it at law or in equity, as well as those available to a secured party under the UCC.

293.     The UCC provides, in part, "... after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties." UCC § 9-609(c).

294.     The secured party's right to possession of the collateral upon default may be asserted against a third party in possession, which may not properly refuse upon the secured party's request for delivery.

295.     Upon information and belief, Debtor/Defendant, individually, and BSMG is in possession of Kapitus' Receipts and other Collateral.

296.     Upon information and belief, by reason of Debtor/Defendant, individually, and BSMG's wrongful retention of the Receipts and other Collateral, Kapitus is entitled to an order for replevin under section 9-609(c) of the Uniform Commercial Code.

## <u>COUNT IX</u>
### Unjust Enrichment against Debtor/Defendant, individually, and
### BSMG Construction Management, LLC and Imposition of Constructive Trusts

297.     Kapitus repeats and realleges paragraphs 1 through 179 above and incorporates the same as though set forth herein.

298.     Kapitus conferred a benefit on Debtor/Defendant through the Purchase Price that it paid for Merchant's receivables.

299.     Upon information and belief, Debtor/Defendant, individually, and BSMG have been benefiting from the Purchase Price and use of Kapitus' Receipts and other Collateral without making any payments or restitution to Kapitus for same.

300.     Debtor/Defendant knew or should have known of the benefit conferred by Kapitus and the expectation of payment.

301.     The retention and use of the Purchase Price, Receipts, and other Collateral by Debtor/Defendant, individually, and/or BSMG is unjust.

302.     Debtor/Defendant, individually, and/or BSMG have been unjustly enriched by using the Purchase Price, Receipts, and other Collateral without making payments or restitution to Kapitus for them.

303.     By reason of the foregoing, Debtor/Defendant, individually, and BSMG, have damaged Kapitus in an amount to be determined at trial, but no less than $191,023.12, which represents the value of Receipts purchased and remaining owed to Kapitus, plus attorneys' fees, costs incurred, such other relief as the Court deems just and proper.

304.     By reason of the foregoing, Kapitus is entitled to the imposition of a constructive trusts because Debtor/Defendant, individually and BSMG are receiving unjust enrichment through the use of the Purchase Price, Receipts, and other Collateral that rightly belongs to Kapitus.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kapitus Servicing, Inc., as Servicing Agent for Kapitus LLC prays for entry of judgment against the Debtor/Defendant Keri Denette Blalock, individually, and Defendant, BSMG Construction Management, LLC as follows:

A.       For an order providing that the debt owed by Debtor/Defendant to Kapitus is non-dischargeable in the instant bankruptcy case, in any other proceeding under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor/Defendant;

B.       Judgment declaring the entire debt owed by Debtor/Defendant to Kapitus is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. §523(a)(2)(B), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6);

C.       Judgement against Debtor/Defendant, individually for fraud;

D.       Judgment against Debtor/Defendant, individually, and BSMG Construction Management, LLC for conversion;

E.       Judgement against Debtor/Defendant, individually, and BSMG Construction Management, LLC for fraudulent transfer;

F.       Judgment granting an order for replevin against Debtor/Defendant, individually, and BSMG Construction Management, LLC under section 9-609(c) of the Uniform Commercial Code;

G.       Judgment against Debtor/Defendant, individually, and BSMG Construction Management, LLC for unjust enrichment and imposition of constructive trust over the Collateral;

H.       Granting Kapitus an award of damages from Debtor/Defendant, individually, and BSMG Construction Management, LLC in the amount of $191,023.12, plus interest from the date of default plus post judgment interest;

I.       Granting Kapitus an award of damages from Debtor/Defendant, individually, and BSMG Construction Management, LLC for Kapitus' attorneys' fees and costs herein incurred; and

J.       Granting such other and further relief as this Court may deem just and proper.

Dated: November 13, 2023

SPENCER FANE LLP

*/s/ Misty A. Segura* _____
Misty A. Segura
Texas Bar No. 24033174
3040 Post Oak Boulevard, Suite 1400
Houston, TX 77056
Telephone: 713.212.2643
E-mail: msegura@spencerfane.com

*/s/ Elizabeth M. Lally*
Elizabeth M. Lally (*Pro Hac Vice* to be filed)
Illinois Bar No. 6286664
Indiana Bar No. 28278-49
Iowa Bar No. AT0013010
Nebraska Bar No. 26428
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: 402.965.8600
E-mail: elally@spencerfane.com

**Attorneys for Plaintiff, Kapitus Servicing, Inc.,
as servicing agent for Kapitus LLC**